IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEMINIKEN ARRINGTON, | : | |
| Petitioner, | : | |
| v. | : | CIVIL NO. L-05-1506 |
| | : | |
| UNITED STATES OF AMERICA | : | CRIMINAL NO. L-02-307 |
| Respondent. | : | |

## **MEMORANDUM**

Now pending is Deminiken Arrington's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255. The prior history of this case is set forth in the Court's Memorandum and Order of June 30, 2006, which is attached hereto and incorporated by reference. For the reasons stated herein, the Court will, by separate order, GRANT the Government's Motion to Dismiss or for Summary Judgment, and DIRECT the Clerk to close the case.

As set forth in the Court's Memorandum of June 30, 2006, Arrington makes the following three claims:

> (i) That his sentence violates the *ex post facto* clause of the United States Constitution. In support of this claim, Arrington emphasizes that the Court used the 2002 Sentencing Guidelines Manual in calculating his sentence, although his offense of conviction occurred in 2000. According to Arrington, this alleged "error" was prejudicial because the Sentencing Guidelines were amended in 2001 to increase the penalties in the fraud table.
>
> (ii) That the amount of restitution imposed by the Court was "oppressive and unfounded"; and
>
> (iii) That his counsel, William Little, was ineffective for (i) failing to object to the Court's use of the 2002 Sentencing Guidelines in calculating his sentence, (ii) failing to object to his criminal history calculation, and (iii) improperly denying him access to the Government's discovery.

In its June 30, 2006 Memorandum and Order, the Court denied Arrington's restitution

claim for procedural default, explaining that Arrington had failed to object to the restitution amount at sentencing and did not file a direct appeal. Accordingly, the Court determined that Arrington's restitution claim was cognizable under § 2255 only if he could demonstrate cause and actual prejudice, or that he was actually innocent. Because Arrington failed to make either showing, his restitution claim was dismissed.[1]

With respect to Arrington's *ex post facto* clause and ineffective assistance claims, however, the Court observed that the record was incomplete. Accordingly, the Court requested further briefing on six questions posed in its June 30th Memorandum. Both the Government and Arrington (who is representing himself) filed supplemental memoranda, which conclusively demonstrate that Arrington's sentence was proper and accurate, and that Arrington's court-appointed counsel, William Little, represented him capably and negotiated an advantageous sentence.

**I. Arrington's Sentence Does Not Violate the Ex Post Facto Clause**

In its supplemental memorandum, the Government conclusively establishes that Arrington was correctly sentenced under the 2002 Sentencing Guidelines.

As Arrington acknowledged in his plea agreement, he was involved in an ongoing wire

---

[1] As part of his plea agreement with the Government, Arrington accepted as accurate a detailed statement of facts outlining his direct and ongoing participation in a fraud scheme that continued "from in or about December 1999 through on or about June 6, 2002." Docket No. 485, Ex. 1. At Arrington's sentencing, the Government made a detailed proffer of the loss caused by the fraud scheme, which amounted to $777,686.17. See Docket No. 566, Ex. B at 15.  Neither Arrington nor his counsel objected to this determination, nor did they object to the imposition of restitution (joint and several with the other co-conspirators) in that amount. In light of Arrington's financial circumstances and child support obligations, the Court ordered him to pay nominal restitution during his 36-month term of supervised release at the rate of $25 per month. That amount was subject to adjustment depending on his income and expenses as monitored by his probation officer.

fraud scheme that did not terminate until two of his co-conspirators were arrested on June 6, 2002. As a result of these activities, Arrington was named as a defendant in Counts 17-22 of the Superseding Indictment in this case. In addition, Arrington pled guilty to Count 8 of the Indictment, involving a fraudulent lease in 2000 of a Range Rover automobile in violation of 18 U.S.C. § 1343.[2]

In 2000, a violation of § 1343 carried a maximum statutory sentence of 60 months. In 2002, however, § 1343 was amended and the statutory maximum was increased to 20 years. In addition, and as Arrington correctly points out, the United States Sentencing Guidelines were amended in 2001 in two significant respects: first, the loss adjustments were increased; second, identity theft was explicitly designated as a specific offense characteristic, carrying a two-level upward adjustment in the defendant's base offense level.

Because the offense charged in Count 8 occurred in 2000, it was subject to the pre-2002 60-month statutory maximum sentence. In other words, by pleading guilty to Count 8, Arrington was able to avoid the 2002 amendment to 28 U.S.C. § 1343. Had the Government insisted that Arrington plead guilty to any of Counts 17-22, which incorporated conduct continuing into 2002, he would have been subject to a 20-year statutory maximum.

As explained in greater detail below, however, Arrington did not benefit under the Sentencing Guidelines by pleading guilty to Count 8. Although Counts 17-22 were not counts of conviction, the fraud charged in those counts (of which Count 8 was a part) constitutes relevant conduct within the meaning of § 1B1.3 of the Sentencing Guidelines. Accordingly, because counts 17-22 encompassed conduct continuing into 2002, the 2002 edition of the Guidelines was

---

[2] The other counts of the Superseding Indictment were ultimately dismissed.

properly applied to the calculation of Arrington's sentence. As a result, Arrington faced a sentence in the range of 92-115 months.

Despite the application of the 2002 Guidelines, however, Arrington remained subject to the pre-2002 statutory maximum of 60 months. At Arrington's sentencing hearing on April 5, 2004, the Court imposed this statutory maximum term. Thus, Arrington obtained a substantial reduction in his sentence by pleading guilty to Count 8 of the Superseding Indictment.

As the transcripts of the Rule 11 colloquy and the sentencing hearing indicate, the plea agreement and its consequences were painstakingly reviewed on the record. At Arrington's rearraignment, his counsel stated: "Under the Guidelines, I believe [the plea agreement] would call for a sentence of higher than five years, but clearly your honor [is] limited by the five years[,] since [that is] the statutory maximum for the offense." See Docket No. 566, Ex. A at 22. Following this statement, the Court asked the prosecutor, Jason Weinstein, whether the Government agreed. Weinstein responded: "[T]he offense levels to which the Defendant stipulates[,] even at criminal history category [I,] provide for a sentence in excess of 60 months. But as the Defendant indicated during colloquy with your honor, he understands that the statutory maximum is five years or 60 months." Id. at 23.

At Arrington's sentencing hearing, the Court implemented the plea agreement. In so doing, the Court adopted the offense level (23) and criminal history (VI) calculations set forth in the Pre-Sentence Report. After consulting the table in the 2002 sentencing manual, the Court determined that the applicable guideline range called for a sentence of 92-115 months. Because this range exceeded the statutory maximum, however, the Court imposed the maximum term of 60 months. Counsel for both sides expressly agreed to this result.

Arrington argues that he should have been sentenced under the 2000 version of the Sentencing Guidelines, under which his sentencing range apparently would have been 46-57 months. This is incorrect. As we have explained, § 1B1.3 of the Guidelines provides that all conduct that is part of the same scheme or course of conduct is pertinent in determining a defendant's offense level. U.S.S.G. § 1B1.3(a)(2). Although the crime to which Arrington pled guilty took place in 2000, it was part and parcel of an ongoing scheme of fraud which continued into June 2002. Accordingly, the offenses charged in Counts 17-22 of Superseding Indictment constitute relevant conduct, and the 2002 Guidelines manual was properly applied in calculating Arrington's sentence.

## II.   Arrington's Counsel was not Ineffective

Based on the analysis above, Arrington's claim that Little should have objected to the Court's use of the 2002 Guidelines Manual in calculating his sentence must be rejected.

Arrington next claims that Little denied him access to the Government's discovery. Arrington fails to state, however, how he would have benefitted from such access. Accordingly, he is unable to establish prejudice.

Furthermore, Little has submitted affidavit (corroborated by his contemporaneous records) that refutes Arrington's claim. According to Little, he received the Government's discovery on April 11, 2003. Arrington was incarcerated at this time. After spending 20 hours reviewing the discovery materials, Little traveled to York County Prison on May 5, 2004, where he met with Arrington and reviewed the Government's discovery. On September 15, 2003, Magistrate Judge James K. Bredar modified Arrington's pretrial conditions and ordered that he be placed in the third-party custody of his sister. Following Judge Bredar's ruling, Arrington was

free to come to Little's office and discuss any discovery he wished to review. Arrington does not dispute this fact.

Mr. Little's affidavit also states that after the sentencing Arrington requested copies of the Government's discovery. In a letter to Arrington dated January 25, 2005, however, Little explained that the terms of the Rule 16 agreement with the Government prevented him from sending copies of the discovery while Arrington was incarcerated. Docket No. 566, Ex. C. This is correct. Accordingly, Arrington's claim that Little withheld discovery materials from him must be rejected.

Finally, Arrington claims that Little should have attempted to expunge certain old convictions that increased his criminal history score. The flaw in this argument, however, is that Arrington's guideline sentencing range would have been greater than 60 months even if he were placed in criminal history category I. Moreover, Arrington has failed to establish that his convictions could have been expunged in the first place. In order to be eligible for an expungement, a defendant may not be convicted of any criminal offense after the date of the conviction he is seeking to have expunged. By entering a guilty plea to Count 8 of the Superseding Indictment, Arrington rendered himself ineligible for expungement of prior offenses. Accordingly, Little was not ineffective for failing to obtain an expungement in this case.

### III.    Conclusion

As the foregoing analysis makes clear, the Government has established that Arrington's sentence did not violate the *ex post facto* clause of the Constitution. Similarly, the record discloses that Arrington's counsel represented him capably and obtained a favorable outcome.

Accordingly, the Government's motion to dismiss the instant action is hereby GRANTED. A separate order follows.

Dated this 21st day of April, 2008.

/s/
Benson Everett Legg
Chief Judge